IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:10CR87 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| ALFONSO SALDANA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on the defendant's objections, Filing No. 31, to the Findings and Recommendation of the magistrate judge, Filing No. 21 and Filing No. 28, concerning the defendant's motion to suppress statements and evidence, Filing No. 14. Count I of the superseding indictment charges defendant with possession with intent to deliver five grams or more of actual methamphetamine in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1). Filing No. 23. Count II charges defendant with conspiracy to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 846. *Id*. The superseding indictment also contains a forfeiture allegation in violation of 21 U.S.C. § 853. *Id*.

Under 28 U.S.C. § 636(b)(1)(C), the court makes a de novo determination of those portions of the Findings and Recommendation to which the parties object. *United States v. Lothridge,* 324 F.3d 599, 600 (8th Cir. 2003). The court has conducted a de novo review of the record and exhibits, including the transcript of the suppression hearing, Filing No. 28 ("Tr."). The court finds that the defendant's objection to the Findings and Recommendation should be overruled and the defendant's motion to suppress denied.

## BACKGROUND

In July of 2009, the Omaha Police Department ("OPD") began an investigation regarding the possession and distribution of methamphetamine. The name "Ponchine" routinely came up as part of that investigation. OPD knew of Ponchine but had no knowledge of a real name or any description of that person. As part of their investigation, OPD obtained a search warrant for the residence at 4462 South 62nd Street in Omaha because a suspect of their investigation, Grace Morales ("Morales"), resided there. OPD officers and SWAT team members executed the warrant at 8:47 p.m. on January 14, 2010. Officers found a passport for "Ishmael Avila," ammunition, methamphetamine, drug scales, and drug records in a bedroom of the home. They arrested Morales, and Officer Robert Branch ("Officer Branch") gave her pre-interview warnings in accord with *Miranda v. Arizona*, 384 U.S. 436 (1966). During the warnings, Officer Branch completed an OPD Rights Advisory Form, which indicated the questions he asked Morales and her responses. After being advised of her rights, Morales waived them and participated in an interview with Officer Branch. During that interview, Morales told Officer Branch that Ponchine and his brother-in-law, Chulio, lived in that bedroom and that the drugs and paraphernalia were theirs. When asked where Ponchine and Chulio were, Morales said that they were out and would be returning later that night. Besides describing them as Hispanic males, Morales gave no other identifying information. At Officer Branch's request, SWAT team members then left and other officers moved their cars so that it would not appear that OPD was present to anyone approaching the house.

Some time between the execution of the warrant and 10:15 p.m., two males and one female came to the house, were detained and questioned. Officers released the

woman and one man and booked the other man into jail.  At approximately 10:15 p.m., two Hispanic males approached the house.  Officers drew their weapons and ordered the men to get down on the ground.  They handcuffed the men, patted them down and arrested them.  Officers then took the men inside and into different rooms.  Fifteen to thirty minutes after the men were detained, Officer Branch left his interview with Morales and came to interview one of the men who was later identified as Alfonso Saldana ("Saldana").  Officer Branch testified that he gave *Miranda* warnings using a laminated card he carried in his pocket but did not complete the OPD Rights Advisory Form as he had with Morales.  When asked by the defense why he did not, Officer Branch replied that he may have had more forms in his car but he did not have more on his person.  Officer Branch further testified that Saldana indicated he understood each warning and waived his rights before Officer Branch began his interrogation,  that a Spanish-speaking officer was made available to Saldana, and that Saldana did not find the interpreter necessary.  Saldana testified that no *Miranda* warnings were given and no waiver was obtained.

OPD and Saldana also disagree on when identification was made.  Officer Branch testified that he believed arresting officers found identification during the pat-down, but Saldana testified that no identification was made until after Officer Branch interviewed him. Saldana claims Officer Branch asked his name, to which he replied, "Alfonso Saldana," and Officer Branch then said, "No, your name is Ponchine."  Saldana testified that he replied, "No, my name is Alfonso Saldana."  Tr. 34.

Officer Branch began the interrogation and asked Saldana if the methamphetamine was his.  Both Officer Branch and Saldana agree that he initially said no.  Officer Branch testified that he then told Saldana that his brother-in-law, later identified as Ishmael Avila

3

("Avila"), had also been arrested and had told officers that the methamphetamine was not his [Avila's]. According to Officer Branch, Saldana then admitted that it was his. Conversely, Saldana testified that after his initial denial, another officer took him to the room in which Avila was being questioned and asked Saldana if the methamphetamine was his [Saldana's], to which he again said no. Saldana then stated that the officer told Saldana someone had to take responsibility, and if Saldana did not do so, Avila would go to jail. Saldana testified that this caused him to claim the drugs were his, after which Avila was released. Officer Branch estimated that the interrogation had lasted a total of five to ten minutes. Officers then took Saldana to Douglas County Correctional Facility and booked him. Officer Branch returned to his interview with Morales, where he obtained more information regarding Ponchine and his drug activities.

      The magistrate judge found Officer Branch to be credible and Saldana to be less than credible. He also found that there was probable cause for the arrest of Saldana because he had been identified by Morales as one who resided in the bedroom and that he would be returning later that evening. The magistrate judge found that *Miranda* warnings had been given and that Saldana understood and waived them. He also found that Saldana's waiver was voluntary in that it was not a result of coercion. The magistrate judge then recommended that the defendant's motion to suppress be denied in all respects.

      The defendant objects to the magistrate judge's Findings and Recommendation on two grounds. First, the defendant argues that there was no probable cause for his arrest because there was no nexus between him and the man Morales identified as Ponchine who lived in the bedroom and who possessed the methamphetamine found in that room.

4

Second, the defendant asserts that since there was no probable cause for the arrest, the statements made after that unlawful arrest are fruit of the poisonous tree and must be suppressed.

## DISCUSSION

### A. Probable Cause

Probable cause for an arrest exists when "at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested." *United States v. Hartje*, 251 F.3d 771, 775 (8th Cir. 2001). In determining whether an officer had probable cause to make an arrest, a court should first consider whether officers had "specific, objective facts" that seizure is justified. *United States v. Palmer*, 603 F.2d 1286, 1289 (8th Cir. 1979). Probable cause does not mean certainty. By its very definition, probable cause implies some gaps in knowledge. "Probable cause means a fair probability." *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010)).

In this case, the arresting officers did have reasonably trustworthy information and specific, objective facts to arrest both Avila and Saldana. The information and facts provided a nexus between Avila and Saldana and the drugs. The officers found Avila's passport, which would have given them a physical description of him. The passport and its discovery in the bedroom provided the nexus between Avila and the drugs; Morales's information provided the nexus between Saldana and the drugs.

5

Although Morales's information alone is less than credible, it was corroborated by OPD only a short time later when they saw events unfold just as she had described. Morales gave information that two Hispanic men would approach the house. She had given the names of Ponchine and Chulio, but it is reasonable that officers believed one of those men was Ishmael Avila because of the passport they had found during their search of the bedroom. When officers observed Avila approaching the house with another Hispanic man, Morales's information was corroborated and it became reasonably trustworthy information. Officers were reasonable in believing that the man who accompanied Avila was the man who shared the bedroom with him. They had evidence of a crime and a passport that connected Avila to that crime. They also had Morales's corroborated information, which led them to believe that the man who accompanied Avila was connected to that crime as well. Officers were not just on the lookout for any two Hispanic men that might approach the house; the passport and Morales's corroborated information provided officers objective facts on which to base their probable cause determination. "The information . . . supplied by the . . . informant and corroborated by police, constituted probable cause." *United States v. Parish*, 606 F.3d 480, 487 (8th Cir. 2010).

The magistrate judge was correct in distinguishing *United States v. Clay*, 640 F.2d 157 (8th Cir. 1981), from the instant case. In *Clay*, officers had no previous knowledge or description of Clay before he approached the house. Clay came to the house during the execution of a search warrant. Officers did not have venue items that connected Clay to the house. No one in the house had suggested that he may be arriving later. No one had given officers any name or physical description of Clay. Nothing gave rise to the probability

6

that Clay was connected to the house or involved in criminal activity and that he would show up at that particular house at that time. In short, officers did not have probable cause to arrest Clay. The instant case is distinguishable. The information Morales gave and its corroboration increased the probability that the men who approached the house at 10:15 p.m. on January 14, 2010, were the men Morales identified as being involved the criminal activity which resulted in drugs being found in her home. Unlike officers in *Clay*, OPD officers had reasonable, corroborated information on which to base the arrest of Avila and Saldana. The arrest was, therefore, lawful.

### B. *Miranda* Warnings

A magistrate judge's finding that an officer's testimony is credible deserves deference. [United States v. Lockett, 393 F.3d 834, 837-838 (8th Cir. 2005)](). The magistrate judge found Officer Branch credible and Saldana less than credible based on a hearing in his courtroom in which both Officer Branch and Saldana testified. He determined this by observing them as each testified. This court was not privy to that exchange and will not second-guess the magistrate judge's judgment. A magistrate judge's determination of witness credibility is "virtually unreviewable on appeal." [United States v. Martin, 28 F.3d 742, 745-746, (8th Cir. 1994)]() (quoting [United States v. Candie, 974 F.2d 61, 64 (8th Cir. 1992)](). Therefore, this court upholds the magistrate judge's finding that Officer Branch did give *Miranda* warnings, that an interpreter was made available, that Saldana refused the interpreter, and that Saldana did in fact waive his *Miranda* rights before speaking with officers.

### C. Coercion

Saldana asserts that his confession was a result of coercion and. therefore, not voluntary. In determining voluntariness, the court must look for "evidence that the

7

statement was given under such circumstances which would indicate that the defendant was coerced or his will overborne." *United States v. Wilson*, 787 F.2d 375, 380 (8th Cir. 1986). In doing so, a court uses a totality of the circumstances approach. *United States v. Wilson*, 787 F.2d at 381. The totality of the circumstances approach examines the interrogation in light of the characteristics of the person giving the confession and the environment in which the confession was obtained. *See generally United States v. Chaidez*, 906 F.2d 377 (8th Cir. 1990). The magistrate judge examined these *Chaidez* factors and found that Saldana's confession was not coerced. The *Chaidez* factors regarding the characteristics of the person making the statement support a finding that Saldana made his statement voluntarily:

1. Saldana was an adult at the time of his statement.

2. There is nothing in the record to show that he was of below-average intelligence or that he was lacking in education.

3. Officer Branch testified that Saldana did not appear to be under the influence of drugs or alcohol.

4. Saldana had waived his *Miranda* rights.

The *Chaidez* factors regarding the environment in which the statement was made also support a finding that Saldana's statement was voluntary:

1. Saldana was only questioned for a short time.

2. There is no evidence that he was threatened, intimidated, or punished by police.

3. There were no promises or misrepresentations by OPD upon which Saldana relied. Officer Branch did testify that he told Saldana his brother-in-law was in trouble. Saldana asserts this was something upon which he relied and that if he confessed, his brother-in-law would be freed. While this may be the case, Officer Branch's statement, if any, was not a misrepresentation, nor was there any evidence that this was said in an intimidating manner.

4. Saldana was in custody, but he had waived his *Miranda* rights.

5.   The interview room was not overly-secluded. It was in a private dwelling, but there were several other people in the house, including at least three who were not a part of law enforcement. Even if this last factor tips in the balance of the defendant, the totality of the circumstances of the *Chaidez* factors weighs heavily in favor of the government in that Saldana's statement was voluntarily given.

## CONCLUSION

The court has reviewed the record and the law and finds the magistrate judge's findings of fact and his legal analysis to be correct. Accordingly, the court will adopt the Findings and Recommendation in this regard.

THEREFORE, IT IS ORDERED:

1. Defendant's motion to suppress, Filing No. 14 is denied.

2. Defendant's objections to the magistrate judge's Findings and Recommendation, Filing No. 31, are overruled.

3. The Findings and Recommendation of the magistrate judge, Filing No. 21 and Filing No. 28, is adopted in its entirety.

DATED this 30th day of July, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.